**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **6TH STREET BUSINESS PARTNERS** | § | |
| **LLC D/B/A SOHO LOUNGE,** | § | |
| **DOMAIN SPORTSBAR INC.,** | § | |
| **THE TRAIN CAR LLC,** | § | |
| **THECORNER BAR AND LOUNGE** | § | |
| **LLC, TBT ALLEN CLUB INC.,** | § | |
| **LUCKY BARREL LLC, JANECKA** | § | |
| **INVESTMENTS INC.,** | § | |
| **BLACK STONE USA INC.,** | § | **CIVIL ACTION** _____ |
| **MICHAEL KLEIN, NICOLE MILLER,** | § | 1:20-cv-706 |
| **BRANDON BURLESON, BRENT** | § | |
| **STRANDE, JEFF VAN DELDEN,** | § | |
| **JOSEF BACHMEIER, SIDDARTH** | § | |
| **PATEL, JASON JANECKA, AND** | § | |
| **BENITO GARCIA** | § | |
| *Plaintiffs* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **GREGORY WAYNE ABBOTT,** | § | |
| **IN HIS OFFICIAL CAPACITY** | § | |
| **AS GOVERNOR OF TEXAS** | § | |
| *Defendant* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

COME NOW PLAINTIFFS, 6TH STREET BUSINESS PARTNERS LLC D/B/A SOHO LOUNGE, DOMAIN SPORTSBAR INC., THE TRAIN CAR LLC, THECORNER BAR AND LOUNGE LLC, TBT ALLEN CLUB INC., LUCKY BARREL LLC, JANECKA INVESTMENTS LLC, BLACK STONE USA, INC., MICHAEL GARCIA, NICOLE MILLER, BRANDON BURLESON, BRENT STRANDE, JEFF VAN DELDEN, JON BACHMEIER, SIDDARTH PATEL, JASON JANECKA, AND BENITO GARCIA (the "Plaintiffs" or "Alliance

Members") and files this PLAINTIFFS' ORIGINAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF complaining of GREGORY WAYNE ABBOTT, in his official capacity as Governor of the State of Texas ("Defendant" or "Abbott"), and for causes of action would respectfully show this Honorable Court the following:

## I.      NATURE OF SUIT

1. This is an action for money damages, declaratory judgment, and injunctive relief brought pursuant to 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendment protections for due process, and equal protection under the federal constitution, as well as violating Plaintiffs' substantive due process rights.

2. Additionally, this is an action for violations of the Texas Constitution and violations of the State Constitutional Right to Assembly (which is not analogous to the Federal Right to Assembly), and the State Constitution's prohibition against any suspension of law by the Defendant.

## II.      DISCOVERY PLAN

3. Plaintiffs intend for discovery to be conducted under the Court's scheduling order and Rules 26 to 37 and Rule 45 of the Federal Rules of Civil Procedure.  This case involves complex issues and will require extensive discovery.  Therefore, Plaintiffs ask the Court to order that discovery be conducted in accordance with a discovery plan tailored to the particular circumstances of this suit.

## III.      INTRODUCTION & BACKGROUND

4. Days away from marking our nation's 244th year of independence from monarchy and subsequent birth as a republic, Texans find themselves in the midst of two serious disasters – the first, a global pandemic caused by the SARS-CoV-2 virus (also commonly referred

to as COVID-19, Covid, or Coronavirus), and the second, a man-made constitutional crisis caused by the Defendant, in his capacity as the Governor of the State of Texas, attempting to control the first disaster by issuing a series of executive orders that have suspended many existing laws or enact new laws the Governor solely deems appropriate (and all violations of said orders subject to criminal fines and regulatory punishment in some cases).[1]  The second disaster may very well leave long-term scarring on the republican form of government if left unchecked.

5.  Over the last four months, the Governor has repeatedly issued executive orders without any proper legal notice to the affected areas (beyond a hastily called news conference), issued on the basis of changing (or opaque) metrics that often conflict with the Governor's own public statements, with advice from a "kitchen cabinet" largely composed of titans of Texas industry and lobbyists (of which, some are significant donors to the Governor's re-election campaign)[2], and all of this after refusing to call the Texas Legislature back for a special session.[3]

6.  There appears to be no end in sight to such executive orders as long as the Governor maintains a state of disaster, and effectively there can be no oversight of his actions as long as the Governor refuses to call the Legislature to a special session.  Texas Constitution, Article 4, §8 authorizes the Governor to convene the legislature in case of the prevalence

---

[1]     Initially, violation of these Executive Order also entailed a possible punishment for up to six months, however, the Governor has "graciously" stepped away from jail sentences at this time, in response to the arrest of a high-profile salon owner, but he has not expressly conceded his authority to re-institute imprisonment.
[2]     See https://www.texastribune.org/2020/04/21/texas-reopening-task-force/
[3]     Texas is among only four states that have **not** had any form of legislative session (regular, special or otherwise) during the COVID-19 pandemic, and it is by far the largest and most populated of these states. See https://www.ncsl.org/research/about-state-legislatures/legislative-sessions-and-the-coronavirus.aspx

of disease threat. As of this filing, Legislators must wait for the 2021 Legislative session to begin, under the current regime.

7.   Initially, the disaster was to have subsided once Texas was able to "flatten the curve" and ensure that hospital bed / ICU capacity met the need of seriously ill COVID patients, over time different targets to end the disaster have been suggested by the Governor (and other executive branch officials) – (e.g., the availability of a vaccine coming to market, herd immunity among the general population (yet continued shelter for vulnerable groups), or some opaque form of governmental data analysis that would inform all of us when the coast is clear). As of the filing of this Complaint, the Governor has publicly repeated the metric of "COVID-19 test positivity rates above 10%" as the most important one to inform his decision to re-open (and/or re-close) certain industries of the State of Texas.

8.   In May 2020, the Governor issued a set of detailed, yet largely voluntary guidelines to aid different businesses and private establishments under the name of "Open Texas" to give some guidance on how such businesses and other private establishments could open (and stay open).  This guidance included reopening and social distancing / sanitation guidelines for restaurants and bars holding TABC permits.[4]

9.   As noted by the TABC on its website as recently as the date of filing of this Complaint, the TABC observed a **high level of compliance by** (and even thanked) TABC permit holders (i.e., bars and nightclubs, and also restaurants, liquor stores and other businesses that are

---

[4]      The Open Texas Guidelines for Bars and similar establishments (confusingly) remain available on the "Open Texas" website (linked at Exhibit F of this Complaint) at: https://open.texas.gov/uploads/files/organization/opentexas/OpenTexas-Checklist-Bars.pdf

permitted to sell alcohol) for following current alcohol polices (including presumably the Governor's executive orders and voluntary guidelines to date).[5]

10. With the erratic legal situation fueled (if not created) by the Governor and given that Plaintiffs have largely complied with the spirit & letter of the Governor's voluntary guidelines, it came as an unfortunate surprise to the Plaintiffs that at approximately 9:00 am on Friday, June 26, 2020, Governor Abbott proclaimed, via Executive Order GA-28 ("EO GA-28") that all bars (and similar establishments that were licensed to earn more than 51% of their revenue from alcohol sales) in the State of Texas would be indefinitely and completely shut down on a mere three hours' notice (along with shutting down only 1 other segment of Texas industry – the river tubing and rafting industry); however all other segments of industry and private, non-profit and governmental establishments could remain open (albeit some with capacity restrictions, and some without any such restrictions).

11. Under EO GA-28, the Open Texas guidelines on social distancing / sanitation still remain voluntary (or rather, to be followed in "good faith"), and cities / counties may not take any action beyond the Governor's edicts – including directly requiring Texans to wear face masks (although the Governor is fine if counties require all businesses to require their customers to wear masks, failing which the business can invoke trespass charges for failure to comply).   EO GA-28 includes a statement that the Governor may by proclamation add to the "establishments or venues that people shall not visit". [6]

---

[5]     As insult to injury, this message of thanks was available prior to the issuance of EO GA-28 (and still remains) on the TABC's website at https://www.tabc.state.tx.us/coronavirus/index.asp under the heading "TABC THANKS YOU FOR YOUR EFFORTS".

[6]     Curiously, the Governor uses the phrase "people shall not visit bar or similar establishments" to shut down bars – and this exact phrasing has been previously construed by the Texas Attorney General as meaning the enumerated establishment should be shut down completely – however, later in EO GA-28, the

12. While EO GA-28 mentions that some businesses could have pickup, drive-through and delivery options subject to a forthcoming TABC authorization (and absent any other law in the Texas codebooks that would allow such sales).  At the time of issuance of EO GA-28, there was no such authorization, and in the last few days the TABC has hurriedly attempted a new waiver request that still leaves the many restaurants, bars and nightclubs (that do not have functioning permanent kitchens onsite) without any way to make any other sales, and thus subject to the threat of license suspension and fines for staying open. To compound matters, GA-28 has been written in a way that precludes any business with an alcohol license and sales above 51% of the total sales for the business, from operating any other business on their premises, even if that business is divorced from the sale of alcohol.

13. Since issuing EO GA-28, Governor Abbott has stated the threat he believes is posed by Texas bars (along with the tubing industry) in spreading COVID-19, without any reference to any verifiable information to support this allegation. This claim is more problematic in the face of reports that the state's new contract tracing system is not adequately functioning to verify sources of infection.  What is most troubling with EO GA-28 is that the order does not specify how long in duration this Executive Order will be (whereas most previous executive orders had a definitive deadline or some form of end) – and what will be required to specifically close and reopen bars (or for that matter, any other establishments that are added to the Governor's shutdown list).

---

Governor states in paragraph 16 – that "**people shall not visit** nursing homes, state supported living centers, assisted living facilities or long-term care facilities" (emphasis added). It cannot be that the Governor is also shutting down these facilities (though they are largely linked to most COVID cases & deaths in Texas). So what do the exact same words mean in the same executive order in three different places?  And for commercial rafting and tubing services also shut down, in paragraph 8 of EO GA-28, the phrase here is "people shall not use" – and no mention of "visit" at all.

14. Yet only days prior to issuing EO GA-28, Governor Abbott stated that the largest contributors to COVID-19 cases in Texas were nursing homes, meat packing plants and jails (all of which remain open and functioning without capacity under GA-28). And still no mention of the increased crowds during Memorial Day weekend, the Governor's decision to stop (and then restart) counties from requiring face masks, all segments of businesses and private establishments have reopened in some capacity, and the large protest gatherings allowed in early June in Major cities across the State.

15. However, the Governor has dug in his heels in the last few days to blame only Texas bars (including these Plaintiffs' bars) as the source of the increase in COVID-19 cases – despite the fact that much of Texans' on-site alcohol consumption remains unaffected by sales via restaurants and other similar establishments that have permits for less than 51% of their revenue from alcohol sales (this is in addition to sales of alcohol permitted for off-site consumption, whether in private or large group settings – with no guidelines of social distancing / sanitation or hygiene whatsoever).

16. The Governor has not explained (much less with any rational basis) why consumption of alcohol at a bar is more dangerous than consumption at a restaurant (or other location). In addition, it is not clear how closing the bars will have any material effect on reducing Texas's virus positivity rate, and more importantly it is not clear how the Governor (or his data crunchers) will be able to verify that there is link between this rate and the bar shutdown without adequate contact tracing.

17. While EO GA-28 stands indefinitely, bar owners will face financial disaster (and some will need to file for bankruptcy); 800,000 Texans that are employed in the industry will be unemployed, waiting for an uncertain date to return if ever; contracts for rent, food,

beverage, equipment and supplies, related services (including for musicians) and/or insurance will be impaired and/or breached with no legal recourse; forgivable PPP loans obtained by bar owners will become unforgivable if employees are not rehired in time as per federal law; and ultimately an entire industry will be destroyed. Consider for a moment the venue of this lawsuit – Austin is known globally as the "Live Music Capital of the World", and most of these music venues are in bars that are (and may forever be) closed, taking away a Texas cultural legacy that wars, fires, earlier pandemics and other disasters were never able to do.

18. It is for this reason that the Plaintiffs, and all members of the Texas Bar and Nightclub Alliance, have filed this lawsuit to fight back against the misguided and irrational beam of attack launched by EO GA-28 at their industry, which will very well be soon aimed by Governor Abbott at other segments of Texas industry if he determines in his sole discretion.

## IV.   <u>PARTIES</u>

19. Plaintiff 6TH STREET BUSINESS PARTNERS LLC D/B/A SOHO LOUNGE is a limited liability company formed under the laws of the State of Texas, and it operates a bar and lounge in Austin, Travis County, Texas.

20. Plaintiff DOMAIN SPORTSBAR INC. is a corporation incorporated under the laws of the State of Texas, and it operates a sports bar and restaurant in Austin, Travis County, Texas.

21. Plaintiff THE TRAIN CAR LLC is a limited liability company formed under the laws of the State of Texas, and it operates a bar, restaurant and cigar shop in Big Springs, Howard County, Texas.

22. Plaintiff THECORNER BAR AND LOUNGE LLC is a limited liability company formed under the laws of the State of Texas, and it operates a bar and lounge in Humble, Harris County, Texas.

23. Plaintiff TBT ALLEN CLUB INC. is a corporation incorporated under the laws of the State of Texas, and it operates a bar and club in Allen, Collin County, Texas.

24. Plaintiff LUCKY BARREL LLC is a limited liability company formed under the laws of the State of Texas, and it operates a bar and restaurant in Brownsville, Cameron County, Texas.

25. Plaintiff JANECKA INVESTMENTS LLC is a limited liability company formed under the laws of the State of Texas, and it operates a bar and grill in Fredericksburg, Gillespie County, Texas.

26. Plaintiff BLACK STONE USA INC. is a corporation formed under the laws of the State of New York, and it operates a bar and restaurant in Fredericksburg, Gillespie County, Texas.

27. Plaintiff MICHAEL KLEIN is a person that resides in Texas and is the president of the Texas Bar and Nightclub Alliance, Inc.

28. Plaintiff NICOLE MILLER is a person that resides in Texas and owns The Corner Bar and Lounge LLC.

29. Plaintiff BRANDON BURLESON is a person that resides in Texas and owns 6th Street Business Partners, LLC that operates SOHO Lounge.

30. Plaintiff BRENT STRANDE is a person that resides in Texas and owns The Train Car, LLC that operates The Train Car.

31. Plaintiff JEFF VAN DELDEN is a person that resides in Texas and owns Domain Sports Bar, Inc.

32. Plaintiff JOSEF BACHMEIER is a person that resides in Texas and owns Black Stone Operation USA Inc that operates The Stable.

33. Plaintiff SIDDARTH PATEL is a person that resides in Texas and owns TBT Allen Club, Inc.

34. Plaintiff JASON JANECKA is a person that resides in Texas and owns Janecka Investments LLC that operates Buc's Bar and Grill.

35. Plaintiff BENITO GARCIA is a person that resides in Texas and owns Lucky Barrel LLC.

36. Defendant Governor GREGORY WAYNE ABBOTT is the Governor of the State of Texas and is the author of EO GA-28.  Defendant is being sued in his official capacity and may be served at 1100 San Jacinto Boulevard, Austin, Texas 78701.

## V.      JURISDICTION & VENUE

37. This Court has original jurisdiction pursuant to the following statutory and common law claims:

   A.  Defendant's acts, omissions, and wrongful conduct are violations of the Fifth and Fourteenth Amendments of the United States Constitution;

   B.  Defendant's acts, omissions and wrongful conduct are violations of the Texas Constitution.

   C.  Defendant's acts, omissions, and wrongful conduct violate Plaintiff's civil rights and are actionable pursuant to 42 U.S.C. § 1983.

38. This Court has original jurisdiction over all civil matters arising under the laws of the United States under 28 U.S.C. §§ 1331 and 1343.

39. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

40. Venue is proper in this Western District of Texas under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions and harm alleged herein have occurred or will soon occur in this district unless judicial relief is obtained.

41. Venue is also proper in this Western District of Texas under 28 U.S.C. §1391(b)(1), because Plaintiffs are residents of the State of Texas, and Defendant Abbott resides in this district within the meaning of that provision.

42. An actual and justiciable controversy exists between Plaintiffs and Defendant.

43. Pursuant to 28 USC § 1367(a), this Court has supplemental jurisdiction over the remaining state claims herein, which are so related to the first cause of action (of violations of the US Constitution) herein that they form part of the same case or controversy under Article III of the federal Constitution and derive from a common nucleus of operative fact and the same parties.

## VI.    FACTS

44. In Texas, businesses can apply for a license to sell alcohol at their business.

45. Texas differentiates between licensees that have more than 51% of their revenue from alcohol sales ("51% license") and licensees that have less than 51% of alcohol sales ("Less than 51% license").

46. This is not necessarily an indicator of the nature of the business, as some restaurants maintain a license and are classified as greater than 51%, and operate like a restaurant. On the other hand, some businesses maintain a license and are classified as under 51% percent

category and they operate a full service "bar" in a section of their restaurant. Defendant's Orders create two classes of licensees by separating licenses based on past alcohol sales.

47. In Texas, businesses with alcohol licenses, that sell alcohol for consumption on their premises, and 51% or more of their sales are from alcohol, are required by the Texas Alcoholic Beverage Commission to post a 51% sign (the "51% license"). The Red Sign, among other things, prohibits patrons from entering the premises with a firearm under all circumstances. In contrast, a business which has a alcohol permit but generates less than 50% of its revenue from the sale of alcoholic beverages is required to post a sign providing "The unlicensed possession of a weapon on these premises is a felony with a maximum penalty of 10 years imprisonment and a fine not to exceed $10,000" (the "Less than 51% license").

48. Texas Alcohol licenses are created by Statute, within the Texas Alcoholic Beverage Code, and the Texas Alcoholic Beverage Commission (the "TABC" or "Agent") is tasked with implementing those statutorily created licenses and regulating those licenses.

49. The statutes do not have a provision that allows the TABC to suspend the statutes that create alcohol licenses in Texas.

50. Further, the Governor of Texas does not have the power to suspend statutes as Article 1, § 28 of the Texas Constitution states, "No power of suspending laws in this State shall be exercised **except by the Legislature.**"

51. During the duration of the pandemic, Governor Abbott has issued many Executive Orders that impact businesses that maintain an alcohol license of some sort.

52. After closing down all restaurants and bars in the state, on April 27, 2020, Governor Greg Abbott issued Executive Order GA 18 relating to the expanded reopening of services as

part of the safe strategic plan to open Texas in response to the that order provided that as of 12:01 AM on Friday May 1, 2020 certain "Reopened Services" would be allowed to operate even if they were not "Essential Services." (Exhibit A, Executive Order GA-18, p. 3).

53. Those Reopened Services include "dine-in restaurants for restaurants that operate at up to 25% of the total listed occupancy of the restaurant" but only "Restaurants that had less than 51% of their gross receipts from the sale of alcoholic beverages and are therefore not required to post the 51% sign required by Texas law as determined by the Texas Alcoholic Beverage Commission." In other words, any business with a majority of their revenue generated from the sale of alcohol was not a "Reopened Service".

54. On June 3, 2020, Governor Abbott issued Executive Order GA-26 which provided restricted opening of businesses that serve food and alcohol, again based on the type of alcohol license granted to a business. However, in addition to the already opened businesses with a less than 51% license, this time the Governor allowed businesses with a 51% license to open at 50% capacity, provided that only customers who are seated shall be served. Additionally, Defendant's order required that groups be no larger than 10 and that the distance between groups must be 6 feet or more. In effect, these rules allowed all liquor licensees to operate their business in what would be commonly understood as how a restaurant would operate with different seating tables or areas for each party within the establishment. (See Exhibit B, Executive Order GA-26).

55. Texas businesses with alcohol licenses ordered supplies, hired staff, and resumed operations based on EO GA-26.

56. On June 26, 2020, at 8:45 AM, Governor Abbott issued EO GA-28, which closed any business with a 51% license, regardless of the nature of the business or the services being provided at the business, and with less than four hours notice. The Order states:

> 6. For dine-in services by restaurants that have less than 51 percent of their gross receipts from the sale of alcoholic beverages, the occupancy limit shall remain at 75 percent until 12:01 a.m. on June 29, 2020, at which time such restaurants may only operate at up to 50 percent of the total listed occupancy of the restaurant, subject to paragraph number 9 below;
>
> 7. People shall not visit bars or similar establishments that hold a permit from the Texas Alcoholic Beverage Commission (TABC) and are not restaurants as defined above in paragraph number 6; provided, however, that the use by such bars or similar establishments of drive-thru, pickup, or delivery options for food and drinks is allowed to the extent authorized by TABC;

(See Exhibit C, EO GA-28).

57. EO GA-28 did not close "bar" type areas, but did close down any person with a 51% License, regardless of the nature of their business.

58. The Texas Attorney General has interpreted the language: "People shall not visit bars…" to mean that the order closes bars and similar establishments.  (See Exhibit D, Advisory Opinion from Texas Attorney General).

59. There is no rational relationship between the disparity of treatment between businesses that have a less than 51 percent license and operate bars, and businesses that have a more than 51 percent license and operate bars, and there is no legitimate governmental purpose.

60. There is no rational relationship between the disparity of treatment between businesses that have a less than 51 percent license and operate restaurants and businesses that have a 51 percent license and operate restaurants, and there is no legitimate governmental purpose.

61. EO GA-28 prescribes a criminal punishment of up to one thousand dollars ($1,000) for each violation of EO GA-28.

62. While some jurisdictions have refused to criminally enforce the provisions of this order, the Texas Alcoholic Beverage Commission has sent licensed peace officers, with a firearm and badge prominently worn, into businesses that maintain a 51% license and are ordering them to shut down under the threat of action of EO GA-28, which includes a criminal penalty.  These are Agents of the Governor, and they have the authorization to make arrests in Texas.  Local police and law enforcement have also relied on GA-28 to shut down all business on premises that maintain a 51% license.

63. Furthermore, these armed officers have threatened action under EO GA-28 for operation of any business, no matter how unrelated it is to the bar, on the premises of a business that has a 51% license.

64. Plaintiff The TrainCar, LLC, ("Train Car") maintains a 51% license with the State of Texas. Prior to the enactment of EO GA-28, Train car adopted the following measures to keep customers safe from the spread of Coronavirus. In early March 2020, Train Car pulled all barstools before any orders by the government.  Train Car has switched to plastic cups, stopped cutting lemons and limes, stopped salting rims on glasses, and placed hand sanitizer at the bar.  Train Car moved tables and seating 6' apart on the patio and did not allow any occupancy indoors.  Customers are now only allowed to enter only to purchase cigars (Train Car pulls them from the humidors) or use the restrooms.  Train Car increased the frequency of cleaning and wiped down seats and tables outdoors after each customer/group.  Train Car enforced the groups of 6 and then 10, per the Governor's earlier orders and only allowed patrons to order while seated.  Plaintiff asked them to remain seated anytime that they had a drink in their hands as that may be considered served.  Customers were prohibited from dancing.

65. In response to the Governor's order, and the threat of criminal action and the taking of his license, Plaintiff Train Car opted to stop selling alcohol at its premises.  Plaintiff opted to sell cigars out of the business to produce revenue, and the selling of cigars is not prohibited by any order.  Even with the voluntary compliance, on Saturday June 27, 2020, two armed and uniformed peace officers, employed by TABC, entered the premises and ordered Plaintiff to stop selling cigars, and ordered it to close its premises under threat of action under EO GA-28. The officers demanded immediate closure, without due process rights being afforded:



66. Under what authority or justification did these officials act? Executive Fiat, derived from an unwarranted interpretation of GA 28  to somehow mean that state actors may exercise

unfettered police power to decide, on-the-fly, what commercial and recreational activities are unlawful, namely the sale of cigars through a storefront, in the time of coronavirus.

67. Plaintiff, Domain Sportsbar, Inc., d/b/a The Park ("The Park"), has a 51% license but operates in a format commonly known as a restaurant. The Restaurant tables are laid out accordingly (pictures taken pre-coronavirus):





68. On June 27, 2020 armed and uniformed peace officers working for TABC entered the premises during hours and ordered The Park to close its doors immediately under threat of action under EO GA-28, which includes a criminal penalty.  The Park refused to close its doors, and asserted that while they had an alcohol license, they were operating as a restaurant.

69. On June 28, 2020, around 6 P.M., armed and uniformed TABC agents returned and told them that they must close, in the presence of customers.  Furthermore, while the Agent verbally ordered closure at the beginning, the agent presented an order to the Bar, signed by the Executive Director of TABC, ordering the suspension of the liquor license effective immediately. (See Exhibit E, Suspension).  The damages to the closure of this restaurant is significant, as Plaintiff has received money under the Paycheck Protection Program, and the requirement that people not enter the business interferes with his obligations to keep his employees employed.

70. Plaintiff Black Stone USA Inc., d/b/a The Stable Lobster House ("Lobsterhouse"), in Fredericksburg, had armed police block the business parking lot on June 29, 2020, preventing the public from entering the property, and TABC Agents assist in forcing the closure.[7]

---

[7] In cases in two different Federal District Courts, in the Southern District of Texas, TRO's have been granted to stop these unconstitutional, heavy handed actions by State actors.  See Case 4:20-cv-01555 and Case 4:20-cv-01596

71. Pictured    below    is    footage    from    the    Lobsterhouse    security    cameras:



72. Before the police action against the Lobsterhouse, pursuant to GA-28, the Lobsterhouse had made the police and TABC Agents aware of information clearly showing our establishment operates and sells over 51% food. One of the owners, Claire Koch, stated the following. "We are heartbroken. I have a four month old baby. We serve over 51% in food sales and have for months. We heard of the Governor's order as we were walking into our son's baptism. With less than 3 hours' notice before opening, we had already thousands of dollars worth of food for the weekend. The stress of operating under COVID, operating while raising a newborn, operating in a horrible economy and now being treated like a criminal. We are just trying to do the right thing."

73. All Plaintiffs in this case have been similarly injured, and face a similar fate as Train Car, The Park, and Lobsterhouse. All Plaintiffs have been ordered by EO GA 28 to shut down, effectively shuttering their businesses.

74. The Governor has picked winners and losers in an irrational basis.  After Dallas salon owner Shelley Luther went on a media blitz, and public officials weighed in on her case,

the Governor took it upon himself to modify his orders for her benefit.[8]  Furthermore, this unequal situation has led to a situation where beauty salons have no restrictions on occupancy in EO GA-28, while cosmetologists and hairdressers come into direct contact with the heads, faces and bodies of other people.

## VII.   CAUSES OF ACTION

### A.  VIOLATION OF 42 U.S.C.§1983

75. 42 U.S.C. § 1983 provides that a person who, acting under color of law, subjects or causes to be subjected any United States citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution, shall be liable to the party injured in an action at law.

76. At all relevant times and regarding all relevant actions of the Defendant as alleged in this Complaint, the Defendant was acting in his official capacity, under color of state law, and pursuant to the official policies, practices and customs of his Governmental Office.

77. Defendant, acting under color of law, have subjected and caused Plaintiffs to be subjected to the deprivation of its rights, privileges, or immunities as secured by the Fourth and Fourteenth Amendments. Specifically, Defendant has violated Plaintiffs' right to due process of law, shutting down the business without legal basis, threatening its representatives with arrest unlawfully and without authority.

### B.  VIOLATIONS OF THE FEDERAL FIFTH AND FOURTEENTH AMENDMENTS – DUE PROCESS VIOLATIONS

78. The Fourteenth Amendment provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law," and protects the individual against

---

[8] See https://www.expressnews.com/news/politics/texas_legislature/article/Abbott-s-flip-flop-on-coronavirus-penalties-15258331.php

arbitrary action of government. U.S. CONST. Amend. XIV. Likewise, the Fifth Amendment to the Constitution provides, in part, that "no person shall be ... deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V.

79. Due process is a flexible inquiry that, at a minimum, requires notice and the opportunity to be heard. See *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The Constitution requires notice and "some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). "If … the state is able to provide the affected individual with a hearing before the deprivation occurs, due process usually requires that the state do so." *Augustine v. Doe*, 740 F.2d 322, 327–28 (5th Cir. 1984).

80. Plaintiffs have a constitutionally protected property interest in operating its business. See *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 221 (5th Cir. 2012) (recognizing that plaintiff's "ability to operate her business, which, as we have stated, is recognized by courts as an important right"). Additionally, Plaintiffs have a constitutionally protected right to be free from seizure of its property without probable cause or adequate justification. See U.S. CONST. Amend. IV, V.

81. These interests are significant. The loss of the ability to reopen any business on his premises in light of Defendant's Order and as implemented by his Agents' threats and actions imperils Plaintiffs' very right to exist. Defendant deprived Plaintiffs of these rights under color of law and without due process of law.

82. The Governor's GA-28 has no end. It provides no pre-deprivation or post-deprivation procedure for the unlawful enforcement of its dictates. There is no right to appeal from Defendant's edict in EO GA-28 or review the indefinite closure and seizure of a business

based on a command that "people shall not visit" the entire premises of all businesses with a 51% license. The only avenue for rectifying this violation of due process is the relief sought herein.

83. The harm has been done and subsists, as the Governor modifies his business orders on an unpredictably basis and has now closed down Plaintiffs' businesses twice. "[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." See *Fuentes v. Shevin*, 407 U.S. 67, 84–85 (1972).

**C.  PLAINTIFFS SEEK DECLARATORY RELIEF**

84. Section 1983 authorizes a plaintiff to seek declaratory relief. Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez, 561 U.S. 661, 673 (2010) (section 1983 suit brought for violations of First and Fourteenth Amendments sought injunctive and declaratory relief). Plaintiff seeks declaratory relief on the following issues:

A.  Whether the Governor's executive orders, specifically EO GA-28, authorize or permit any agent of the State to close or impede Plaintiffs' otherwise lawfully-operated business, while their business also maintains a 51% license with the State of Texas; and,

B.  Whether the enforcement of the Governor's executive orders permits State actors to close or impede Plaintiffs' otherwise lawfully-operated business without providing Plaintiffs' notice and an opportunity to be heard before taking such actions.

D. **VIOLATION OF THE FEDERAL FOURTEENTH AMENDMENT – EQUAL PROTECTION VIOLATION**

85. Under the Fourteenth amendment, "[n]o State shall…deny to any person . . . the equal protection of the laws." A similar constraint has been implied against the federal government through the Fifth Amendment. See *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). There is no rational relationship between the disparity of treatment and some legitimate governmental purpose in Plaintiffs' closure of businesses that maintain a 51% license.

86. Defendant has chosen to order that anyone with a 51% license must close their business, but anyone with a less than 51% license, may remain open at a diminished capacity. Contrary to the narrative promulgated by the Defendant, he did not close "bars" and leave restaurants open.  Instead, he closed some bars, and closed some restaurants. There is no rational basis for the disparity of treatment and there is no legitimate governmental purpose for closure solely based on alcohol licensing.  To compound matters, there is no rational business to preclude any business of any nature, from operating if that business entity so happens to have obtained an alcohol license.

87. Further, there is no rational basis for the disparity of treatment and no rational basis for an order to close any business that holds a 51% license, while also authorizing cosmetologists, massage establishments, barbershops, nail salons, tanning salons, tattoo studios, piercing studios, and other close contact businesses to operate with no occupancy restrictions.

88. Defendant's actions are arbitrary and capricious.

## VIII.   VIOLATIONS OF THE TEXAS CONSTITUTION

89.  Defendant violates the Texas Constitution Art. 1 §19, Due Process of Law Clause and Art.

1§27 which provides that:  "The citizens shall have the right, in a peaceable manner, to

assemble together for their common good."  The Texas Supreme court has held that:

> Wherever the Constitution makes a declaration of political
> privileges or rights or powers to be exercised by the people or the
> individual, it is placed beyond legislative control or interference, as
> much so as if the instrument had expressly declared that the
> individual citizen should not be deprived of those powers,
> privileges, and rights; and the Legislature is powerless to deprive
> him of those powers and privileges. See *Bell v. Hill*, 174 S.W.2d
> 113, 120 (1934).

90. Defendant's restriction on all individual Plaintiffs' right to assembly is subject to a strict

scrutiny test, as the Texas Right to assemble is a fundamental right, and is treated

differently in Texas law than the right to assemble in federal law, based on the State

Jurisprudence analyzing the language that provides significantly different protections than

the protections provided in the First Amendment. Since the infringement of the

fundamental right to assemble is not narrowly tailored to serve a compelling government

interest, it violates the Texas Constitution's guarantee to due course of law. See *Zaatari v.*

*City of Austin*, No. 03-17-00812-CV, 2019, Tex. App. LEXIS 10290, (Tex. App. – Austin,

2019).

91. Defendant also violates the Texas Constitution, Art. 1, §28 which provides that, "No power

of suspending laws in this State shall be exercised except by the legislature."  Defendant's

order closing all businesses that have a 51% license, combined with the enforcement

actions by his agents, is a *de facto* suspension the statutory provisions that created the

alcohol licenses given to the businesses that he closed down. Chapter 418 of the Texas

Government Code cannot give the Defendant authority to ignore the Texas Constitution, as a Statute passed by the Texas Legislature are subject to the Constitution.

## IX.   ATTORNEYS' FEES

92. Plaintiffs request payment of their reasonable attorneys' fees and costs. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

## X.   APPLICATION FOR INJUNCTIVE RELIEF

93. Pursuant to Local Rule 65 of this Court, Plaintiffs intend to separately request that this Court immediately issue a temporary restraining order, followed by a preliminary and ultimately, a permanent injunction order restraining Defendant (and his officers, agents, servants, employees, attorneys and any persons in active concert or participation with him) as follows:

A. From enforcing Paragraph 6  and 7 of the EO GA-28 as promulgated in its current form against Plaintiffs (or any bars or similar establishments that are not restaurants) so as to shut down any bar or similar establishment with an active permit from the TABC in good standing.

B. From enforcing a shutdown of less than 25% of the stated capacity of a bar or similar establishment, provided, that the bar or similar establishment must comply with any guidelines for social distancing, hygiene or sanitation issued by the Governor's Office in the form of the "Open Texas Guidelines" as of the June 3, 2020.

C. From requiring bars or similar establishments to have a permanent, onsite food kitchen or to sell food in order to obtain a waiver from the TABC for delivery, pickup or drive through sale of alcohol.

D.  From shutting down bars or similar establishments from conducting activities not related to the sale of alcohol for on-site consumption; provided, that each such bar or similar establishment obtains the relevant license or authorization from the regulatory body with jurisdiction and otherwise complies with any guidelines for social distancing, hygiene or sanitation issued by the Governor's Office in the form of the Open Texas Guidelines as of the June 3, 2020.

E.  From issuing any further executive orders for the duration of this state of disaster related to COVID that have effect within less than twenty-four (24) hours from the time of such executive order is issued and promulgated to the Secretary of State (and other relevant bodies as required by the Texas Government Code),  unless there is an imminent threat of harm to persons, property or an area of the state that requires less than 24 hours of notice, provided, that in such case, any fine or regulatory suspension is waived for violation of the relevant executive order.

F.  From issuing any further executive orders that do not have an initial end date or condition to end the operation of such executive order, subject to the Defendant's right to amend or extend such end date.

94. Plaintiffs will show that they are entitled to injunctive relief because it has (1) a substantial likelihood of success on the merits; (2) Defendant's conduct presents a substantial threat that it will suffer irreparable injury absent the injunction; (3) this threatened injury outweighs any harm the injunction might cause the Defendant; and (4) the injunction will not impair the public interest.

95. Absent an injunction, Plaintiffs will suffer irreparable injury. Businesses have a right to transact lawful business. The loss of constitutional freedoms for "even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The enforced closure of <u>any other business operation</u> on the premises of a business that has a liquor license further intensifies this irreparable injury.

96. Monetary relief is insufficient as a matter of law because the harm Plaintiffs will suffer between now and trial if not allowed to operate will result in the loss of business.

97. An injunction will not significantly burden any of the Defendant's interests because nothing in the injunction in any way inhibits Defendant's legal law enforcement function. Indeed, the public interest favors the issuance of injunctive relief to protect the constitutional rights at stake in this case.

## XI.    <u>RESERVATION OF RIGHTS</u>

98. Pursuant to the rules of pleading and practice, Plaintiffs reserve the right to assert additional violations of federal and state law.

## XII.    <u>DAMAGES</u>

99. Plaintiffs now seek and request an award granting the following relief:

   a) Actual and consequential damages;

   b) All statutory damages;

   c) All reasonable and necessary attorneys' fees through the time of trial, and such further attorneys' fees in the event this matter is appealed;

   d) All expert fees and costs;

   e) All statutory interest;

   f) Plaintiffs seek up to $10,000,000 in this matter;

g)  All costs of Court and in all appellate courts;

h)  Pre-judgment and post-judgment interest at the highest rate allowed by law; and

i)  All such other and further relief, general and special, legal and equitable, to which Plaintiffs may be justly entitled.

### XIII.   <u>PRAYER AND RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs respectfully request judgment be entered in their favor for declaratory, injunctive and monetary relief as follows: (i) that EO GA-28 as promulgated by the Defendant on June 26, 2020 as applied to bars and similar establishment violates the Fifth and Fourteenth Amendments and other provisions of the US Constitution, (ii) that Defendant be ordered to sit for a deposition to explain his basis for enacting EO GA-28 pursuant to the causes of action delineated in this complaint; (iii) that Defendant be ordered to compensate Plaintiffs in an amount not to exceed ten million dollars ($10,000,000), prejudgment and post-judgment interest as allowed by law, attorneys' fees, expert fees, costs of suit; and (iv) for all other relief, in law and in equity, to which Plaintiffs may be justly entitled.

Dated: June 30, 2020

Respectfully submitted,

**EDWARDS SUTARWALLA PLLC**

By:

Brent Webster
State Bar No. 24053545
George Edwards III
State Bar No. 24055438
Murtaza Sutarwalla
State Bar No. 24056398
1300 McGowen St., Suite 270

Houston, Texas 77004
and
500 St. Johns Avenue, Suite 2.620
Austin, TX 78752
(832) 717-2562
(713) 583-8715
Email: brent@eslawpartners.com
Email: george@eslawpartners.com
Email: murtaza@eslawpartners.com
www.eslawpartners.com

**ATTORNEYS FOR PLAINTIFFS**