IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 6TH STREET BUSINESS PARTNERS LLC *d/b/a* SOHO LOUNGE, DOMAIN SPORTSBAR INC., THE TRAIN CAR LLC, THE CORNER BAR AND LOUNGE, LLC, TBT ALLEN CLUB INC., LUCKY BARREL LLC, JANECKA INVETMENTS INC., BLACK STONE USA INC., MICHAEL KLEIN, NICOLE MILLER, BRANDON BURLESON, BRENT STRANDE, JEFF VAN DELDEN, JOSEF BACHMEIER, SIDDARTH PATEL, JASON JANECKA, and BENITO GARCIA, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, *in his official capacity as Governor of Texas*, <br><br> Defendant. | § § § § § § § § § § § § § § § § § § § § § § § | 1:20-CV-706-RP |

**ORDER**

Before the Court is Plaintiffs 6th Street Business Partners LLC *d/b/a* Soho Lounge, Domain Sportsbar Inc., The Train Car LLC, The Corner Bar and Lounge LLC, TBT Allen Club Inc., Lucky Barrel LLC, Janecka Investments LLC, Black Stone USA, Inc., Michael Klein, Nicole Miller, Brandon Burleson, Brent Strande, Jeff Van Delden, Josef Bachmeier, Siddarth Patel, Jason Janecka, and Benito Garcia's (together, "Plaintiffs") amended motion for a Temporary Restraining Order[1] ("TRO"). (Am. Mot. TRO, Dkt. 8). Plaintiffs ask the Court to issue a TRO enjoining Defendant Gregory Wayne Abbott, *in his official capacity as Governor of Texas*, from enforcing Executive Order No. GA-28. (*Id.* at 2). Abbott filed a response in opposition, (Dkt. 15), and a motion to dismiss Plaintiffs'

---

[1] In a prior order, the Court denied Plaintiffs' motion for an ex parte TRO because Plaintiffs' counsel did not certify in writing any efforts made to give notice to Abbott or why notice should not be required. (*See* Order, Dkt. 7, at 2–3); *see also* Fed. R. Civ. P. 65(b)(1)(B).

1

complaint, (Dkt. 18). Having reviewed the parties' motions, the Court finds that Abbott's motion to dismiss should be granted, Plaintiffs' amended request for a TRO should be denied, and this action should be dismissed for lack of subject-matter jurisdiction.

## I. BACKGROUND

On June 26, 2020, Governor Greg Abbott ("Abbott") issued Executive Order GA-28 ("GA-28") in response to the public health emergency presented by the COVID-19 pandemic. (GA-28, Dkt. 1-4, at 1). GA-28 prohibits people from visiting bars or similar establishments that hold a permit from the Texas Alcoholic Beverage Commission ("TABC") and make more than 51% of their gross receipts from the sale of alcoholic beverages. (*See id.* at 4 ("People shall not visit bars or similar establishments that hold a permit from the [TABC] and are not restaurants as defined above")). However, GA-28 allows said bars or similar establishments to offer drive-through, pickup, or delivery options for food and drinks "to the extent authorized by TABC." (*Id.*).

Plaintiffs are bars and bar owners that hold 51% licenses from the TABC; that is, Plaintiffs make more than 51% of their gross receipts from the sale of alcohol and are thus subject to closure under GA-28. (Am. Compl., Dkt. 24, at 14). After Abbott issued GA-28, Plaintiffs allege the TABC "sent licensed peace officers, with a firearm and badge prominently worn, into businesses that maintain a 51% license and order[ed] them to shut down." (*Id.* at 15). They now bring federal claims against Abbott, in his official capacity, under 42 U.S.C. § 1983, for alleged violations of the First,[2] Fifth[3], and Fourteenth Amendments as well as state claims alleging violations of the Texas Constitution. (*Id.* at 20–24). They ask the Court to award declaratory relief, injunctive relief, and

---

[2] Plaintiffs filed an Amended Complaint, (Dkt. 24), on July 20, 2020, adding a claim under the First Amendment. They allege GA-28 violates the First Amendment's "right to freedom of assembly" because it "bars assembly of any persons on private property, solely based on past economic usage of that property." (Am. Compl., Dkt. 24, at 20).
[3] As Abbott rightly notes, "[t]he Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor" and is therefore inapplicable here. (Mot. Dismiss, Dkt. 15, at 18 (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)).

monetary damages. (*Id.* at 27–30). Abbott opposes Plaintiffs' amended TRO motion and additionally argues the Court should dismiss Plaintiffs' claims for lack of subject-matter jurisdiction and for failure to state a claim. (*See* Resp., Dkt. 15; Mot. Dismiss, Dkt. 18).

"A party seeking a TRO can not establish a 'substantial likelihood of success on the merits' of his claim if the court concludes that it lacks jurisdiction to adjudicate the claim altogether." *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020). Subject-matter jurisdiction must be established as a "threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). This requirement is "inflexible and without exception." *Id.* Therefore, before turning to Plaintiffs' request for injunctive relief, the Court must first address Abbott's motion to dismiss and determine whether it has jurisdiction to adjudicate Plaintiffs' claims.

## II. MOTION TO DISMISS

### A. Legal Standard

Abbott asks the Court to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[4] Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may exercise jurisdiction only as the Constitution and federal statutes expressly confer. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff

---

[4] Defendants also move to dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). (Mot. Dismiss, Dkt. 18, at 11–24). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because the Court finds Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction, it does not reach the question of whether Plaintiffs have plausibly alleged federal and state constitutional violations.

3

constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In deciding a Rule 12(b)(1) motion, the Court may consider the complaint alone; the complaint and any undisputed facts in the record; or the complaint, undisputed facts, and the Court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B. Analysis**

Abbott invokes two jurisdictional bars to Plaintiffs' claims: (1) Plaintiffs lack standing because their injury is neither fairly traceable to Abbott nor redressable by an injunction against him; and (2) Plaintiffs' claims against Abbott are barred by sovereign immunity. (*See* Mot. Dismiss, Dkt. 18). The Court will address each argument in turn, noting that the crux of each inquiry requires the Court to determine whether Abbott has the requisite enforcement "connection" to GA-28.[5]

1. Standing

Under Article III of the Constitution, federal court jurisdiction is limited to cases and controversies. U.S. Const. art. III, 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). A key element of the case-or-controversy requirement is that a plaintiff must establish standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of establishing Article III standing). To establish Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact that is (2) fairly traceable to the defendant's challenged action and (3) redressable by a favorable outcome. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). If a plaintiff fails to establish all three of these elements, it lacks standing to sue in federal court.

---

[5] *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (quoting *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)) ("'[T]here is 'significant overlap' between our standing and *Young* analyses. . . . 'It may be the case that an official's connection to enforcement is satisfied when standing has been established,' because if an 'official *can* act, and there's a significant possibility that he or she *will*[,] . . . the official has engaged in enough compulsion or constraint to apply the *Young* exception.'"); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) ("'[O]ur caselaw shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question.").

4

Abbott argues that Plaintiffs cannot satisfy elements (2) and (3) because they have not alleged that Abbott has taken any actions to enforce GA-28 or that he will take such actions in the future. (Mot. Dismiss, Dkt. 18, at 4). Moreover, Abbott contends he "has no authority to enforce the requirements of his executive order should Plaintiffs violate [it]" because though § 418.012 of the Texas Government Code empowers him to "issue, "amend," or "rescind" executive orders, it does not empower him to "enforce" them. (*Id.* (citing Tex. Gov't Code § 418.012)). Because Abbott lacks the power to enforce GA-28, he contends Plaintiffs have not established that he caused their injury or that an injunction enjoining his enforcement of GA-28 would redress their injury. (*Id.* at 5).

Meanwhile, Plaintiffs argue that Abbott caused their injury because he "draft[ed], enact[ed], [and] issue[d] statements to the press directing his orders to be enforced." (Reply, Dkt. 25, at 5). Plaintiffs also point to an email between the TABC and Abbott's office relaying a TABC-permit holder's request that the TABC "implore the governor's office" for a waiver. (Email, Dkt. 25-1, at 1–2). The email concludes with a request from the TABC to "please advise," which Plaintiffs contend "demonstrate[s] that TABC is seeking direction and coordination with the Governor's office." (*Id.* at 1; Reply, Dkt. 25, at 5).

Plaintiffs' argument is well-taken, but ultimately foreclosed by current Fifth Circuit law. In *In re Abbott*, 956 F.3d 696 (5th Cir. 2020), the Fifth Circuit concluded that while § 418.012 of the Texas Government Code empowers the governor to promulgate executive orders, it does not empower the governor to enforce them. *See id.* at 709 ("The power to promulgate law is not the power to enforce it."); Tex. Gov't Code § 418.012 ("[T]he governor may issue executive orders, proclamations, and regulations and amend or rescind them."). This interpretation of § 418.012 vindicates Abbott's standing argument: if Abbott is powerless to enforce GA-28, then Plaintiffs' enforcement-based injuries cannot be fairly traced to nor redressed by him. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) ("The requirements of *Lujan* are entirely

5

consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute."); *see also Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) ("Because the plaintiffs have pointed to nothing that outlines a relevant enforcement role for Governor Abbott, the plaintiffs' injuries likely cannot be fairly traced to him."). Indeed, Plaintiffs' own allegations indicate that the TABC—not Abbott—is the regulatory agency responsible for enforcing compliance with GA-28. (*See* Am. Compl., Dkt. 24, at 12, 15 ("[The Texas Alcoholic Beverage Commission has sent licensed peace officers, with a firearm and badge prominently worn, into businesses that maintain a 51% license and are ordering them to shut down"; "Texas Alcohol licenses are created by Statute, within the Texas Alcoholic Beverage Code, and the Texas Alcoholic Beverage Commission (the "TABC" or "Agent") is tasked with implementing those statutorily created licenses and regulating those licenses.")).

Following *Abbott*, as the Court is bound to do, Texas law does not explicitly grant Abbott the power to enforce compliance with GA-28. And if Abbott lacks that power, Plaintiffs cannot establish that he caused their enforcement-based injury or that enjoining certain activities by Abbott would redress their injury. Accordingly, Plaintiffs have not met their burden to establish Article III standing to litigate their claims against Abbott in federal court.

2. Sovereign Immunity

Even if Abbott's connection to Plaintiffs' alleged injury were sufficiently traceable to and redressable by him, sovereign immunity would also bar Plaintiffs' claims against Abbott in his official capacity. The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). However, under the *Ex parte Young* exception to sovereign immunity, lawsuits may proceed in federal court when a plaintiff requests prospective

relief against state officials in their official capacities for ongoing federal violations. 209 U.S. 123, 159–60 (1908). Thus, "[t]here are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

At the outset then, certain of Plaintiffs' claims fail. First, sovereign immunity bars Plaintiffs' request for retrospective monetary damages against Abbott in his official capacity "in an amount not to exceed ten million dollars." (Am. Compl., Dkt. 24, at 30). To take advantage of the *Ex parte Young* exception, "the relief sought must be declaratory or injunctive in nature and prospective in effect." *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020). Second, sovereign immunity bars Plaintiffs' state-law claims against Abbott, in his official capacity, for violations of the Texas Constitution because "the *Ex parte Young* doctrine only reaches alleged violations of *federal* law." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015); *see also Corn*, 954 F.3d at 275 ("[S]tate officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). That leaves the Court with Plaintiffs' federal claims for declaratory and injunctive relief against Abbott in his official capacity, which may proceed only if they fall within the *Ex parte Young* exception to sovereign immunity.

"For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin*, 943 F.3d at 997 (quoting *Young*, 209 U.S. at 157); *see also Abbott*, 956 F.3d at 708 ("*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided

7

they have sufficient 'connection' to enforcing an allegedly unconstitutional law."). Absent such a connection, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Abbott*, 956 F.3d at 709.

While "[t]he precise scope of the 'some connection' requirement is still unsettled," the Fifth Circuit has stated that "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Texas Democratic Party*, 961 F.3d at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). And "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the] *Young* analysis ends.'" *Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). Where, as here, "no state official or agency is named in the statute in question, [the court] consider[s] whether the state official actually has the authority to enforce the challenged law." *City of Austin*, 943 F.3d at 998.

Abbott contends that Plaintiffs cannot seek injunctive or declaratory relief against him under *Ex parte Young* because he "has no authority to enforce the requirements of his executive order should Plaintiffs violate GA-28." (Mot. Dismiss, Dkt. 18, at 4). He argues that the TABC is responsible for implementing and enforcing TABC licenses and that TABC agents—not Abbott— ordered the bars at issue to shut down. (*Id.*). Because he has not taken any action to enforce GA-28, does not plan to take any action in the future, and is in fact powerless to enforce the requirements of his executive order under Texas law, (*see id.*), Abbott argues he cannot be sued for injunctive relief under the *Ex parte Young* exception to Eleventh Amendment immunity. (*Id.* at 9).

Under current Fifth Circuit law, the Court agrees that Abbott cannot be sued in this case for injunctive relief under the *Ex parte Young* exception. As previously noted, the Fifth Circuit reached this very issue in *Abbott* on a petition for a writ of mandamus directed to this very Court. After the District Court entered a second TRO against Abbott, exempting various categories of abortion from GA-09, Abbott filed a petition for a writ of mandamus, contending, among other things, that "the

district court violated the Eleventh Amendment by purporting to enjoin [Abbott]." *Abbott*, 956 F.3d at 708. The Fifth Circuit agreed that the Eleventh Amendment required Abbott's dismissal and admonished the District Court for failing "to consider whether the Eleventh Amendment requires dismissal of the Governor or Attorney General because they lack any 'connection' to enforcing GA-09 under *Ex parte Young*." *Id.* at 709.

While the District Court concluded that Abbott had "some connection to GA-09 because of his statutory authority [under] Texas Government Code § 418.012," the Fifth Circuit read this provision narrowly, concluding that while § 418.012 empowers the Governor to "issue," "amend," or "rescind" executive orders, it does not empower him to "enforce" them. *Id.*; *see also* Tex. Gov't Code § 418.012. Because "[t]he power to promulgate law is not the power to enforce it," the Fifth Circuit held that Abbott "lack[ed] the required enforcement connection to GA-09" and thus could not be enjoined under the *Ex parte Young* exception to sovereign immunity. *Abbott*, 956 F.3d at 709.

By this reasoning, Plaintiffs may not rely on the *Ex parte Young* exception to obtain injunctive relief against Abbott in this case either.[6] Though Abbott promulgated GA-28, he has not taken any steps to enforce it—nor could he, under the Fifth Circuit's reading of § 418.012. *See id.* As Plaintiffs' allegations show, the TABC is the regulatory agency charged with the enforcement of the provisions at issue and the agency that "sent licensed peace officers . . . into businesses that maintain a 51% license and [ordered] them to shut down." (Am. Compl., Dkt. 24, at 14; *see also* GA-28, Dkt. 1-4, at 3 ("[F]ailure to comply with any executive order issued during the COVID-19 disaster . . . may be subject to regulatory enforcement.")); *Abbott*, 956 F.3d at 709 ("[W]e have already explained that violating GA-09 may result in administrative or criminal penalties enforced by health and law

---

[6] In reaching this conclusion, the Court relies on the Fifth Circuit's statement that its reasoning in *Abbott* applies with equal measure to all executive orders issued during the COVID-19 pandemic. *See* 956 F.3d at 704 ("Once again, the dissenting opinion accuses the majority of treating abortion differently and once again it is wrong. At issue is whether abortion can be treated the same as other procedures under GA-09. It is the district court that treated abortion differently, issuing back-to-back TROs that did not follow the law.").

9

enforcement officials and not the Governor."). In light of *Abbott*, the Court concludes that Abbott lacks the enforcement connection to GA-28 required to obtain injunctive relief against him in his official capacity under *Ex parte Young*. *See* 956 F.3d at 709. The Eleventh Amendment thus bars Plaintiffs' claims for monetary damages and declaratory and injunctive relief.

### C. Effect of Plaintiffs' Amended Complaint on Abbott's Motion to Dismiss

After Abbott filed his motion to dismiss this case, Plaintiffs filed an amended complaint, adding an additional claim under the First Amendment. (Am. Compl., Dkt. 24, at 20–21). Specifically, Plaintiffs allege that GA-28 "violates the First Amendment right to freedom of assembly, as it bars any assembly of any persons on private property, solely based on past economic usage of that property." (*Id.* at 20). While an amended pleading may render moot a pending motion to dismiss, it does not necessarily do so. *See Rodriguez v. Xerox Bus. Services, LLC*, EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016). If "the objections raised by the motion remain unresolved" by the plaintiff's amendments to its pleading, the court may still decide the motion to dismiss and "consider [it] addressed to the amended pleading." *Amaya v. Crowson & Crowson, LLP*, EP-13-CV-00130-DCG, 2013 WL 12126243, at *2 (W.D. Tex. June 6, 2013).

Here, the Court finds that Plaintiffs' claims should be dismissed for reasons unaffected by the amendment. The Court lacks subject-matter jurisdiction to adjudicate Plaintiffs' First Amendment claim for the same reasons it lacks subject-matter jurisdiction to adjudicate Plaintiffs' other federal claims: Plaintiffs lack standing to sue Abbott and Abbott is protected by the shield of Eleventh Amendment immunity. Accordingly, Plaintiffs' amended complaint does not render Abbott's motion to dismiss moot.

### III. PLAINTIFFS' AMENDED TRO MOTION

Because the Court lacks subject-matter jurisdiction, the Court may not consider Plaintiffs' amended request for injunctive relief, (Dkt. 8). "'Without jurisdiction the court cannot proceed at all

in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

## IV. CONCLUSION

For the reasons stated, the Court concludes that it lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims. Accordingly, **IT IS ORDERED** that Abbott's motion to dismiss, (Dkt. 18), is **GRANTED**. Plaintiffs' amended motion for a TRO, (Dkt. 8), is **DENIED**, and this action is **DISMISSED** for lack of subject-matter jurisdiction.

**SIGNED** on July 24, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE